Good morning, Your Honors. Your Honors, there's no dispute in this case about the applicable jurisdictional principles that control under both the general jurisdiction and specific jurisdiction analyses. The test from the Supreme Court and from this Court on those points Are we seriously claiming general jurisdiction here? Yes, Your Honor, we are. This little car dealer in Ohio? That's right. This little car dealer in Ohio, even though Helicopteros says that buying a lot of stuff someplace is not a basis for general jurisdiction? That's correct, Your Honor, because what Helicopteros does not say is that purchasing must be ruled out as a factor in the general jurisdiction analysis. And let me ask the companion question. You're seriously arguing for specific jurisdiction? We are seriously arguing for specific jurisdiction as well. Okay. Okay. We don't totally rule out purchasing as a basis for general jurisdiction, but we notice that Fred Martin Motor Company, those guys are just all over the place in California selling cars, promoting their website in California. Everybody in California drives out to Ohio to buy a car. No, Your Honor, but – It sounds silly. But whether California purchasers are buying the automobiles that this defendant is selling is, again, not the touchstone. The touchstone is whether the California contacts that this defendant engages in are central to its ability to conduct business in Ohio, and they are. And list – I mean, we know them in the brief, but let's just get them on the table. List those contacts for us that, in your view, are sufficient for general jurisdiction. And before I do that, I would mention that these contacts are pertinent to both the general jurisdiction and the specific jurisdiction analysis, and they are manifold. Okay. And they are? First and foremost, Fred Martin purchases over $62 million worth of inventory from entities incorporated in the State of California. And what is that that they purchase? Automobiles for sale. And what cars are they? Isuzu's. A bunch of Japanese and Korean imports, right? Exactly, Your Honor. But they are purchased from California entities. When you say purchased from California, what do you mean, purchased from California? The cars come through California. I understand that. Tell me more about what it means to purchase from California for these vehicles. To enter into an agreement for the supply of a certain amount of automobiles with an entity that is incorporated and does business in California. So the sellers are California corporations? Yes. They are California corporations that issue invoices bearing a California address and that oftentimes include in their agreements provisions for California choice of law and California forums for dispute resolution. How do you distinguish helicopteros? That's a very good question, Your Honor, and that's what I think hung up the district court in this case. Is the notion that helicopteros stands for the proposition that purchases must absolutely be ruled out as a basis for general jurisdiction. We distinguish helicopteros in a number of... Absolutely ruled out as a straw man. Okay. If it's a straw man, the pertinent point would be that this court has not followed helicopteros where... We've overruled the Supreme Court? No. You have certainly not overruled the Supreme Court, but you have found this case distinguishable in the T.H. Davies decision involving substantial purchases from an offshore company, from a U.S. company of, I believe what was the main purchase was generators, and there the purchase of three units approximated roughly $1.5 million. If I had to decide whether to read a Ninth Circuit decision in a limited way or whether to confine a Supreme Court decision to its facts, I might feel a little safer confining the Ninth Circuit decision despite my collegial attachment to all of our decisions. I mean, I look at this language in helicopteros. We hold that mere purchases, even if occurring at regular intervals, are not enough to warrant the State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions. And to me, that what makes me wonder is why you're seriously asserting general jurisdiction. Because the purchase transactions are but part and parcel of an overall strategy engaged in by Fred Martin to use the California markets to assist itself in doing business in Ohio. Well, what else? Well, general jurisdiction requires the equivalent of presence. That's right. What else constitutes you keep talking about doing their business in Ohio, but you need to argue that they're here. What else besides the purchases makes them present in California? They also contract and do over $300,000 worth of business with a direct mail marketing firm located in California that assists them in promoting the sales of their car elsewhere, their cars. And again, let me understand the nature of that business. They're not direct mail marketing into California. No, they are not. But the firm is here. And so when they send their bills, the billing is done here. But that firm does its work probably in Ohio in terms of where the mailings go, where the addresses, where the mailings go is up to Fred Martin. But it's undisputed that those mailings don't go to California. That's right. OK. And in addition, they also retain the services of a California consulting firm that helps them train their sales force in Ohio. So you can see. That sounds like more purchases in California. They're purchasing services in California. So it sounds like that quotation that I read you from Helicopteris speaks to it. I think what speaks best to that quotation and to the facts of this case is an examination of the Davies case and how this court decided that Helicopteris did not apply there. Now, the consequence of general jurisdiction is that any suit based on any factual situation or any cause of action may be brought in California against Fred Martin. So let's say I have a slip and fall in their retail premises in Ohio. I can sue them in California based upon that slip and fall. That's your argument. That is our argument that the contacts of this defendant with this forum are extensive enough to support general jurisdiction, given the extremely high volume of purchases that they make, the central nature of those purchases to their ability to transact business, the fact that each and every one of their other contacts, including the use of Mr. Schwarzenegger's name and likeness, is also done in an effort to promote its core business of automobile and financing sales in Ohio. But here's Helicopteris. My goodness, they purchase helicopters from Texas, from this company in Texas. They get training as to their use in Texas. The helicopters are taken to Southern California. And then the suit is brought against them in Texas for effective product that they themselves sold out of Texas. I mean, this case isn't even close. You're right, Your Honor. This case is not close. It's distinguishable from Helicopteris on two grounds. The first ground was identified by this court itself. Oh, yes. This isn't even close to what the Helicopteris court seems to require. I'm sorry. I stated that incorrectly. What the Helicopteris court did was rely on an older decision that also examined whether purchases would be sufficient and examined whether a limited nature, limited volume of purchases that were not critical to the entity's business would suffice, and found that they would not. Going from that reasoning, Helicopteris held as it did, what it did not hold was that it did not hold that the defendant's activities within the state should not be controlling. And what this court went on to hold in Davies was that general jurisdiction looks at the economic reality of the defendant's activities within the state, whether those be purchases or sales or any other number of economic activities, should not be controlling. What should be controlling is if that economic activity is substantial and if it is central to the defendant's business operations. And that is the situation that we are looking at here. The Rosenberg case that the Helicopteris case relied on did not feature that situation. The Helicopteris case itself did not feature that situation, as was pointed out in the Provident National decision, which distinguished that case because the Texas contacts there were not central to the core business that Helicopteris was engaging in in South America. You know, there's the Davies case is a funny case because it involves the Republic of the Marshall Islands. And it's also a funny case because it doesn't say we distinguish Helicopteris on such and such a basis, even though it's 15 years after Helicopteris. I can't explain that, Your Honor. I think we recognize that both cases involve the question of general jurisdiction hinging on purchasing. I'm wondering whether we're just compelled to say T.H. Davies is a Marshall Islands case or something along those lines. I would think that would be. To the peculiarities of trade by companies in foreign countries with the Marshall Islands. The vast distances of the Pacific. I don't know. If they didn't distinguish Helicopteris, we pretty much have to, because we have to explain how T.H. Davies can exist in the same world as Helicopteris. If anything, Your Honor, it would seem to me that when an international party is involved, the test should be perhaps even more stringent than when a resident of one of the sister states is being held into court in California. So a fortiori, Helicopteris is a dead letter in the Ninth Circuit. Your Honor, we have this precedent and we know why it was decided. We know that there the economic situation was viewed as a whole, which is consistent with the U.S. Supreme Court's approach in several cases, including Burger King, which specifically held that jurisdiction may not be avoided simply because the defendant does not physically enter the forum state. And that's really what we're getting down to here, is whether the contacts here, either in the specific jurisdiction analysis or the general jurisdiction analysis, include anything that Fred Martin points to in its briefing, such as the maintenance of an office or any other sort of physical contacts with the state. And what Burger King held, and this case perhaps goes right to the limit of that due process requirement, was that physical contacts are not necessary and the purpose of the conduct that approximates a physical presence. Why don't we move to the specific jurisdiction question? Why don't we move to the analysis of specific jurisdiction? That's fine, Your Honor. Why does specific jurisdiction exist here? Specific jurisdiction, again, examines the totality of the defendant's contacts with the forum to determine whether cumulatively what we have is a sequence of activities designed to use the forum for the defendant's benefit. And this Court concluded that the specific jurisdiction test for a tort, which, Mr. McRae, she is, looks at the nature of the tort and where the injury occurred and where the effects of the tort are felt. It does, Your Honor, against the backdrop of the reasonableness backdrop. I'm not going to go into the details of the factors from Panavision, but just focusing on, you rely on Calder and Sinatra to say that the facts here meet the effects test. In fact, the sequence of activities notion that I just laid out for the Court is straight out of Sinatra. All right, but let's focus on those cases and how they differ from your case. I see a difference in the fact that the advertisement and the defamatory article in Calder and Sinatra were actually circulated in California, whereas here, the advertisement appears to be a local advertisement in Ohio. Is that correct? That's correct, Your Honor, and that was a factor in the district court's decision as well. So why does it not make a difference? Why does it not take it out of the realm of the traditional effects test? Because the fact that those publications appeared in California were certainly mentioned by the courts that recited those cases, but it was not the determinative factor. It was simply one of the many factors discussed in the jurisdictional analysis that helped the court reach the decision that it did. Neither of those cases would have come out otherwise, I would posit, if the publications had not occurred in California. Unfortunately, we're into hypothetical ground there. We can't really know how those courts would have decided. That factor has been missing. I'm not sure that that's true. In Calder, the National Enquirer said that this California celebrity drank so heavily that she couldn't perform her professional obligations. It's a national newspaper. You can buy it, I would guess, at any grocery store in California at the checkout stand, and they know perfectly well when they write the story that, number one, she lives in California. I actually wouldn't have known where Arnold Schwarzenegger lived if he hadn't decided to run for governor. Maybe some people are more familiar with these celebrities. But the National Enquirer had done the reporting. They knew the woman lived in California. They knew that she made her career there. And they published a statement about her for being too much of a drunk to perform her jobs, which would obviously impair her employability where she lived in California, and they circulate the paper in California. I can't see why you would think that that wouldn't matter. Because the purposeful availment test does not require that the act intentionally directed at the plaintiff have taken place in the forum. What it requires is that the defendant have felt that injury within the forum. Okay, good. So tell us what effect was felt here. Mr. Schwarzenegger's name and likeness are uniquely valuable. There's something about the combination of humor and the brink of apocalypse that people tend to gravitate toward. And this is clearly the reason why Fred Martin – Be it the state of California or of Schwarzenegger? I'm speaking to my client Arnold Schwarzenegger at the moment. And, of course, Fred Martin knew this when it decided to incorporate Mr. Schwarzenegger's name and likeness into its advertising. They did not just randomly select someone. I understand that. But if I can make the question a little more pointed, what harm was suffered in California? Mr. Schwarzenegger suffered the loss of compensation that he otherwise would have received had he been inclined to license his name and likeness in this way, which is not something that's – So it was a loss of money by Mr. Schwarzenegger. Exactly. Now, what happens if I live in California and I have property in a house in, I don't know, Massachusetts? Someone comes and steals the personal property and I bring – I want to bring a lawsuit for return of the property. Can I bring the suit in California? Well, under the express aiming test, the conduct has to be targeted at a plaintiff whom the defendant knows to be a resident of the former state. Well, that's why – I have this – I wish this were true. I have this summer house in Massachusetts. They know I live here in California. And so in the wintertime, knowing that I live in California, they take the stuff. That's when they can take it. That's when I'm not there. Is that enough? Your Honor, I think that that actually would work. And that answer is shaded somewhat also by the California Supreme Court's recent decision or analysis in Pavlovich v. Superior Court, where express aiming and targeting was the crux of the opinion. There, the requirement was not met because the defendant was found to have generally aimed at an industry said to be located within the State of California. Here, and in your example, what we have is targeting of an individual and injuring a specific individual. Under your argument, then, any time someone does an act that is – will posit illegal under the relevant tort law with an adverse economic effect on someone in California, knowing that the person lives in California, that automatically subjects them to impersonal jurisdiction in California. Well, that satisfies the purposeful availment prong of the specific jurisdiction test. You have to then go on to – Then go through the remainder of the reasonableness and so on. Why is the injury – why are you characterizing the injury as solely economic? I mean, the way I look at it is this is a tort of misappropriation. It's unique to California. It's the right to control your own likeness and the use of your own name and likeness. And so I think there's an independent harm to the – a harm independent of pure economics here. But, on the other hand, it does seem, then, that every nationally and internationally known movie star who happens to reside in Hollywood would be able to sue almost anybody across the country who used their name or likeness for anything. Just hail them into court in feral district court in the central district of California. It does seem like it just opens our court to – without having the test, without having more of an express aiming of the state to limit it, express aiming the act toward the state to limit it, like you had in Calder and Sinatra, we could be opening the central district to, I don't know, thousands of lawsuits along these lines simply because the celebrity has chosen to live here and not New York or wherever else. Your Honor, that's a result that I think offends no principle of this court or the Supreme Court or any public policy. Actually, this precise set of facts under specific jurisdiction has never yet been ruled upon, so it can't really offend anything. That's right. And what I was going to go on to say is that the flip side of the equation is those thousands of lawsuits then have to be pursued piecemeal in whatever jurisdiction the wrongdoer decides to commit an act. What's the matter with that? Why isn't that the cost of Arnold doing business, Senator Arnold Schwarzenegger doing business? Why isn't that a cost of his business of licensing his name and likeness, that he has to have an enforcement cost? Because to hold that, Your Honor, would be to say that it's a cost of all of our businesses, of maintaining our own name and likenesses. The fact that Mr. Schwarzenegger is a celebrity should not make him be treated any differently. Well, I'm not. For the rights that California has to protect his name and likeness under its laws. Federal Motors can't drag everybody's lawsuits back to Detroit. They're stuck litigating where Ms. Laufrey are. Unless the jurisdictional tests are satisfied. No, I was checking on what you told me about Calder v. Jones and what did not matter in Calder v. Jones, and I'm having trouble reconciling it with what looks to me like the punchline in Calder v. Jones. Petitioner South wrote and Petitioner Calder edited an article that they knew would have a potentially devastating impact upon Respondent. They knew that the brunt of that injury would be felt by Respondent in the state in which she lives and works and in which the National Enquirer has its largest circulation. Under the circumstances, petitioners must reasonably anticipate being hailed in a court there. Now, in this case, I couldn't find anything in the record that showed that this Ohio car dealer even knew that Schwarzenegger lived and worked in California as opposed to living and working somewhere. That is in the record, Your Honor. They specifically testified in deposition that they were aware of at least Mr. Schwarzenegger's status as a celebrity who would primarily do business in Hollywood and around. No, I looked in the record, and I couldn't find where they knew where he lived. But also, they certainly didn't circulate their car ads in California, as the National Enquirer had its largest circulation in California. The whatever injury would be felt would primarily be to what people thought of Arnold Schwarzenegger. Gee, is he sunk to the level of having the shill for car dealers in this whatever this what was it Toledo or Akron or someplace, whatever town the car dealer was in and not in California. So I can't see why they'd reasonably anticipate being hailed into court by analogy with Calder. It doesn't look analogous to Calder. Give us a citation to the record. I will. It's at Exegetive Records, Volume 1, 64 to 85, 94 to 95, and 344 to 348. And those items of testimony will confirm at the minimum that Fred Martin knew of Mr. Schwarzenegger's employment in the or speculated plans at that time to possibly run for governor. That's coming up a little short, actually. Movie industry, a lot of that, they make movies in New York. They make them in Vancouver. A lot of movie stars live in New York. Your Honor, I do not know the testimony verbatim, and I do not believe that Fred Martin ever possibly admitted that they knew that Arnold Schwarzenegger resided in California, although I may be wrong on that, and I would encourage you. Even a political ambition. My gosh, we have a senator from New York who comes from Arkansas. Your Honor, there can be very little doubt that what we're talking about is someone with strong ties to the forum, and that Fred Martin knew that when selecting that image for its advertising to assist it in selling cars. On your second point, on the Calder notion, again, when I read Calder, I see that case saying that California was the focal point. Both of the story and the harm suffered. The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California, and the brunt of the harm in terms of Bolt Jones's emotional distress and the injury to her professional reputation was suffered in California. It sounds like distinguishing language rather than analogizing language. I see that as language that is focusing on the status of the California plaintiff and the harm that that plaintiff felt, which mentions incidentally that. These are reporters. They're writing about her. They know she's in California. They say she's a drunk and can't do her work that she contracts to do in California, and they circulate the papers in California. Well, the circulated papers. You don't see any difference. The only distinguishing factor that I see is that here we have an ad that ran in Ohio. We have an equally egregious act of somebody usurping the valuable name and likeness of a California celebrity, knowing full well that they weren't authorized to do it, to further their commercial activities. Okay. I understand what you're saying. Thank you, Counsel. Thank you. Roy Weatherup of Haight Brown and Bonesteel for Defendant and Appellee Fred Martin Motor Company. My client is a small Ohio corporation whose business is to sell cars in Ohio and only in Ohio. Let me first address the question of general jurisdiction, and it's defined in the case. Move right on to specific jurisdiction. Yes. Would you? On specific jurisdiction, some of the cases were the test pretty abstractly. And what I'm wondering is whether we are compelled to reverse. We have to review de novo, right? Yes. I'm wondering whether we have to say that because Schwarzenegger does his work in California and has his name in California and lives in California, and the injury would be to his professional standing in California if it looks like he's shilling for a car dealer, kind of a reduced status among celebrities, whether that's enough for specific jurisdiction. I submit that it's not. Under the Ninth Circuit case of Glencore v. Shibnath cited in the briefs, a plaintiff has to demonstrate three separate things to establish special jurisdiction. First, purposeful availment of the forum's laws with respect to the particular transaction giving rise to the lawsuit. Second, it has to arise out of forum related activities. And third, the exercise of jurisdiction must be reasonable. And here. That is an accurate statement of the personal. It's an accurate statement of the general personal, specific personal jurisdiction test. That test, we use the effects test when we're dealing with a tort. And that test is the test that both the Calder court and the Sinatra court applied. And in the Calder court, they said that specific jurisdiction is satisfied where the defendant committed an intentional act aimed at the forum's state, which caused harm there. It's a pretty simple question for satisfying the purposeful availment part of the test. Why — how does your situation not fit that statement of the effects test, which, by the way, the district court did not really focus on the difference in the nature of the tort that she was analyzing? Well, because the plaintiffs of public counsel have made new arguments that were not really presented to the trial court with respect to the Calder and Sinatra cases, both of which arose from publications in the National Enquirer, which, as is widely known, claims to have the largest circulation of any newspaper in America. I understand the factual distinction of Calder, but the test — why doesn't the test that Calder stated apply here? Your client committed an intentional act using Arnold Schwarzenegger's name and likeness to sell his cars, and it was aimed at someone in California, Arnold Schwarzenegger. I've got to go back and check the record to see if that was, in fact, known at the time. Although, I mean, he is definitely universally known, and most people associate him with California, certainly now, and which caused harm there. Well, it's undisputed in this case that Arnold Schwarzenegger lives and does his business dealings from California, and there would be harm both from appearing to be — you know, to have lost the value, and from actual loss of value of his name and likeness from not being able to license it to other decrease in the value others would attribute to it, if it can just be used by anybody. No, I would disagree with those characterizations. First, the intentional harm or intentional injury claim. This is not a defamation case. This is a violation of the right of publicity case. And if there was such a violation, it did not arise as a result of California law. It arose as under the laws of Ohio, if it arose at all. And the California privacy statute and the California common law do not have extraterritorial effect. And so the question of an intent to injure somebody in California, as in Sinatra and Calder, just doesn't apply. There's no intent to injure. At most, there's an intent to use someone's property for one's own purposes and profit in Ohio. I'm not following that, because under California law, Arnold Schwarzenegger has a right. He has — it's not a right of privacy. It's a right of publicity. And there's specific statute, commercial misappropriation statute and common law, that protects it. It's a right. That right that he has in California was infringed upon by the actions of your client that occurred in Ohio. That would be so only if the publication were distributed in California, which it was not.  Because if — the conduct is not wrongful in Ohio unless there's some Ohio law that makes it wrongful. And here was a local business advertising in Ohio. And if there was harm to the plaintiff, it was to the value of use of the right of publicity in Ohio. It's not as — there's no wrong under California law as pleaded. And I also disagree that any suggestion that was stated by opposing counsel that Fred Martin selected the picture. The record does not show whether it was Fred Martin or Zimmerman and Partners Incorporated that selected the photograph and made the decision to use it. Ohio law that any business can appropriate the name of any celebrity and use it to advertise in their business. No, we do not make such a contention. But Ohio has a right of publicity statute. But it is written such as to protect only Ohio residents. Oh, let me ask you this. Assume for a moment that California does have impersonal jurisdiction on a specific jurisdiction theory. Are you saying that California choice of law principles will result in the California court necessarily choosing not to rely on California law? Yes, that's our contention. And if this case — I'm somewhat skeptical of that. It may be that if this suit were tried in Ohio, that the Ohio court would not rely on California law. But my instinct is that California, having a great affection for its own law and its own residents, might apply California law if it has jurisdiction. Well, I don't think it has jurisdiction. I think it would be constrained to apply Ohio law because only — Constrained by full faith and credit requirements of the Constitution or constrained by California choice of law principles? By California choice of law rules. Do they require the court to apply the law of the place where the wrongful conduct occurred? No. There's an impairment, comparative impairment of governmental interests. And this is conduct in Ohio. And the interests of the States are reflected in their laws. And there are different interests in this case. And I think under California conflict or choice of law rules, Ohio law will be applied whether this case is tried as to Zimmerman or as to Fred Martin Motor Company, whether in Ohio or in California. Now, as I understand, we — there is jurisdiction over Zimmerman. That's not contested. That's not now in front of us. So there is going to be a suit going forward here against Zimmerman. The only question is whether your client is also going to be included in this lawsuit. Yes, that's right. Could you tell me, is it conceded that Fred Martin, Fred Martin Ford or whatever it was, knew that Schwarzenegger was a resident of California? No. The only evidence on that is that cited by opposing counsel, where one employee of Fred Martin Motor Company said that he was aware of newspaper reports indicating that the plaintiff was contemplating running for governor of California and that he was associated with the movie industry. When did the ad run? It was in, I believe, April of 2002. I can't find the time, but I believe that was it. Okay. But the effects test is one aspect of the writing out of form-related activities and also the purposeful availment. And here there was no availment of California law, no action taken by the defendant, Fred Martin Motor Company, relying on California law or in any way anticipating being hailed into a California court. The whole case arises from a small advertisement that circulated only in the Akron, Ohio, area. And the effects test is not as unlimited as suggested by the plaintiff. The Worldwide Volkswagen case and others show that it's not foreseeability. It's what the defendant does. And here the defendant did nothing in relation to the State of California that falls within the facts and holdings of any of the cases in which jurisdiction of a special nature has been upheld. Well, Glenn, so you're relying on the statement, the analysis in Glencore, and Glencore is a contracts case. Yes. And this is a tort case. And there's a different standard of law under which you judge tort cases. Well, the Worldwide Volkswagen was a tort case, too. And the analysis there by the Supreme Court of the United States was such that jurisdiction was found absent because the court rejected this very nebulous test of foreseeable effects. And the Calder and Sinatra cases rested on intentional effects, which are very different from what we have here. Which is what the plaintiff's resting on here, is an intentional effect in California. Well, there wasn't any intentional act in California. Even assuming the pleadings. No, no, there wasn't an intentional act, but there was an intentional effect. Well, the effect was limited to Ohio. The intentional act was in Ohio with the effect in California. No, I disagree that there was any effect in California. Okay. Just let me just to answer one other point, because I don't want to take up all your time. There's one thing that troubles me. It's kind of the converse of the question I asked the plaintiff's lawyer, the multiplicity of suit question. Yeah. If the person who's injured in this, given the nature of this tort, the commercial appropriation, if the person who has that right and the right to control his name and likeness has to go to all 50 states to sue every potential car dealer and whoever wants to just steal his name and likeness to advance his business, doesn't that give California a greater interest in in protecting the rights of the citizen who lives there? No, California has no right to regulate advertising in California or impose liability. I mean, Ohio or impose liability for advertising in Ohio. Well, that's not really answering my question. The theory of the effects tests and finding jurisdiction where the injury occurred is that the state has an interest in protecting its citizens from injury that occurs here, which might have been where the act might have been committed elsewhere. Well, but the injury did not occur here unless the newspaper circulated here. And that's therefore a very different situation. Well, those are two very different causes of action. Well, the cause of action, if there is one, arises under Ohio law for damage to the property interest and the right of publicity in Ohio. And if 50 different car dealers had done this, they would have. And if all of them had advertised only in their own states, yes, then the plaintiff would have to rely on the laws of those states. But here there was no injury in California. There was a. Can I pursue that? There was no injury in California. I think I'm going to start out by stating things that I think are simply facts, and then we can decide whether or not we have injury and where their injury where the injury might be. We have an ad published in Ohio using Mr. Schwarzenegger's likeness and using the word terminate, so it's clear that this comes within the purview that he's entitled to protect, I think, under Ohio law as well as California law, which means that if they wanted to use that, they had to come to him and they had to say, we want to do this. How much is it going to cost us? And he would have said it'll cost you one hundred dollars. It'll cost you ten thousand dollars. Or he would have said, I don't I'm never giving it to him. He could have said whatever he was going to say. Let's say that he would have sold them the right to do that for a thousand dollars. Yes. He has been harmed by their action to the tune of a thousand dollars. Yes. He lives in California. How can you say I mean, all those things are uncontested. How can you say that this man who lives in California has not been harmed in California by the deprivation of a thousand dollars? It's like the hypothetical example of your house in Massachusetts. His property in Ohio has been harmed or taken. But he's still here and his rights that exist in California have not been harmed. Well, but he's he's poorer than he otherwise would have been and he's never left California. How can he be harmed in Ohio and not California? If one could establish jurisdiction by suffering a financial loss. Well, I'm not asking you at the question of jurisdiction. I'm just asking about whether there is harm. And if we can talk about this somewhat metaphysical concept with respect to money that's never been paid, where the harm is. I think the harm that he feels is likely to be where he is. Well, he may feel it, but it's a harm to his property in Ohio or his right to property in Ohio is right. You say when they would have paid him a thousand dollars, they would have paid him a thousand dollars in Ohio. They'd come and get it. They wouldn't send him a check to California. Well, you know, I can't speak for the advertising agency and I can't speak for the plaintiff. It seems to me that the argument that there was no harm suffered in California is a weak argument. It may be that there's not enough harm. It may be that there was not purposeful availment. It may be that they didn't even know he was in California. I don't know. I find that a little implausible. But that there was no harm suffered in California when he lives in California and it is to his economic interest. Well, if there was harm, it certainly was not the intentional harm of the type found in the National Enquirer case. Counsel, as I understand our follow-ups to Calder, our purposeful availment cases, we don't simply look at where the harm occurred. We look at where it was known to be likely to occur, where it is. I think we've used the term expressly aimed. And we have said that express aiming means directing wrongful conduct at a known forum resident. Right. That's why I was asking you before whether the defendant, the Fred Martin Motor Company, knew that Schwarzenegger lived in California as opposed to knowing that he was a star. I mean, I know a lot of Hollywood stars. Dustin Hoffman, Mia Farrow, Woody. Oh, all sorts of them live in New York. Yes. I like tend to be New York media stars. I don't think there's any evidence of aiming or intent to harm or anything of that character. Is there any more evidence that we can look at to determine whether Fred Martin Motor Company knew that Schwarzenegger lived in California? Let's suppose that we go along with the proposition that the Fred Martin Motor Company knew it was harming the property interest in his image of Arnold Schwarzenegger, this celluloid star, wherever he may actually live. And did they know that they were aiming this harm at somebody who lived in California? Is there any more evidence? I don't think there's any evidence that would establish that proposition. Either that they did or that they didn't. Are there any pages we should look at besides what your adversaries say? No, the part of the record cited by my adversaries, I believe all of the evidence there is, which is that one employee read somewhere in the press about the fact that the plaintiff was contemplating running for governor. And was was with those reports before or after the ad? I don't think the record is clear on that point. I think that this is something that came when was the ad? Because the person who so testified was not involved with the ad. Well, the depositions usually occur subsequent to the conduct that the depositions are about. Yes. The depositions are about. When was the ad? I think the the I can find the. April 25, 2002. Yes. Yes. That's when it was. And the depositions were taken pursuant to leave of the district court on jurisdictional issues. And they were late in 2002. And they but they were referring to to the knowledge of. I have no idea when this recall business started. It's not big news in Alaska. Yeah. It's I don't think it's relevant to this election. It might have been relevant. There was some speculation in 2002 about the plaintiff running for governor. And that's undoubtedly what one of the owners of Fred Martin Motor Company testified about. But but this particular person, as indicated by the whole of his deposition, which I believe is in the record, did not have direct knowledge of any of this until after the ad had run, because his view was that this was the responsibility of the advertising agency to get all legal clearances and so forth. We find jurisdiction is liable. The advertising agency is going to have to indemnify him. Well, that is our view. That's outside this record. But I'm beginning to understand this better. This is the view of Fred Martin Motor Company. Yes. But we believe there's no no jurisdiction because any wrong here is a wrong under Ohio law with damages suffered in Ohio to a property interest recognized in Ohio. And it's not equivalent to an injury in California caused by defamation, which is targeted by a publication in a publication circulated in California. And this is a very far cry from the National Enquirer cases because it's a very, very different situation. So small local newspaper, small local business that hired an advertising agency in Florida and ran these ads. No connection to California. Thank you, counsel. Schwarzenegger versus Fred Martin Motor Company is submitted.
judges: Kleinfeld, Wardlaw, W Fletcher